1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JASON EARLY, et al.,                    No.  2:16-cv-00740-DAD-DB

12              Plaintiffs,

13        v.                                 ORDER GRANTING IN PART AND
                                             DENYING IN PART PLAINTIFF'S MOTION
14   KEYSTONE RESTAURANT GROUP,              FOR ATTORNEYS' FEES AND COSTS
     LLC, et al.,
15                                           (Doc. Nos. 134, 182)
              Defendants.
16

17        This matter is before the court on the motion for an award of attorneys' fees and costs

18   filed by plaintiff Sarah Early.  (Doc. No. 182.)  On February 22, 2024, the pending motion was

19   taken under submission to be decided on the papers pursuant to Local Rule 230(g).  (Doc.

20   No. 185.)  For the reasons explained below, the court will grant in part and deny in part plaintiff's

21   motion for an award of attorneys' fees and costs.

22                              **BACKGROUND**

23        On April 10, 2016, plaintiff Jason Early, as guardian *ad litem* for plaintiff S.E.[1] (his then-

24   sixteen-year-old daughter), filed the complaint initiating this action against her employer alleging

25   _____

26   [1]  A few years after this action was filed, plaintiff S.E. turned eighteen years old and was no
     longer a minor proceeding in this action through her father, plaintiff Jason Early, as a guardian *ad*
27   *litem*.  (*See* Doc. No. 36-1 at 2, n.1.)  Though the docket was not updated at that time, the court
     and the parties thereafter referred to plaintiff Sarah Early as the sole plaintiff in this action.
28   Consistent with that approach, the court will likewise refer to plaintiff in the singular in this order.

                                        1

that she had been the victim of sexual harassment, discrimination, and retaliation during her

employment at a Sonic restaurant in the summer of 2015.  (Doc. No. 1.)  On October 19, 2016,

plaintiff filed the operative second amended complaint against defendants Keystone Restaurant

Group, LLC ("Keystone") and Sonic Industries LLC, Sonic Franchising LLC, and Sonic

Industries Services Inc. ("the Sonic defendants"), asserting the following nine federal and state

law claims:  (1) hostile work environment due to sex harassment in violation of Title VII of the

Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, ("Title VII"); (2) retaliation in violation of

Title VII; (3) sex discrimination in violation of Title VII; (4) hostile work environment due to sex

harassment in violation of California's Fair Employment and Housing Act, California

Government Code §§ 12900, *et seq.*, ("FEHA"); (5) quid pro quo sexual harassment in violation

of FEHA; (6) sex discrimination in violation of FEHA; (7) retaliation in violation of FEHA;

(8) failure to prevent harassment and retaliation in the workplace in violation of FEHA; and

(9) wrongful termination in violation of public policy.  (Doc. No. 18.)

　　　In August 2017, plaintiff moved for summary judgment in her favor and against defendant

Keystone on all claims except the first claim[2] (Doc. No. 36), and the Sonic defendants moved for

summary judgment in their favor as to all claims (Doc. No. 40).  On November 21, 2017, the

then-assigned district judge held a hearing on those motions and issued an oral ruling granting the

Sonic defendants' motion in full, and granting plaintiff's motion for summary judgment as to

plaintiff's fourth claim (FEHA hostile work environment) but otherwise denying plaintiff's

motion for summary judgment.  (Doc. Nos. 51, 56, 71, 97.)

　　　After the parties requested and received several continuances of the trial date, a six-day

jury trial commenced on September 5, 2018.  (Doc. Nos. 105, 115.)  On the last day of trial, the

court granted defendant Keystone's motion brought under Rule 50 of the Federal Rules of Civil

Procedure for judgment as a matter of law in its favor on plaintiff's ninth claim of wrongful

termination in violation of public policy as to all three theories of recovery advanced by plaintiff

/////

---

[2]  As reflected in the court's amended final pretrial order, the parties subsequently stipulated to
the dismissal of plaintiff's first claim (Title VII hostile work environment).  (Doc. No. 68.)

as to that claim.[3]  (Doc. Nos. 106; 127-3 at 22–30.)  The court determined that plaintiff's first two theories predicated on labor code violations failed as a matter of law, and the third theory based on retaliation was unnecessary and redundant of her retaliation claim, and would therefore confuse the jury.  (*Id.*)  For these reasons, the court decided that plaintiff's wrongful termination in violation of public policy claim would not be submitted to the jury.  (*Id.*)

On September 12, 2018, the jury returned a verdict finding in favor of plaintiff and against defendant Keystone on her fifth claim (FEHA quid pro quo sexual harassment) and eighth claim (FEHA failure to prevent harassment and retaliation); and finding in favor of defendant Keystone and against plaintiff on her second claim (Title VII retaliation), third claim (Title VII sex discrimination), sixth claim (FEHA discrimination), and seventh claim (FEHA retaliation).  (Doc. No. 121.)  The jury awarded plaintiff $50,000.00 in damages.  (*Id.*)

On October 3, 2018, the court entered judgment pursuant to the jury's verdict and ordered that "[p]laintiff is entitled to prejudgment interest at a rate of 2.58% accruing from September 12, 2018 to the date this judgment is entered and post-judgment interest at a rate of 2.59% accruing from the date this judgment is entered."  (Doc. No. 129.)  The court also provided a deadline for plaintiff to file requests for costs and attorneys' fees as the prevailing party under FEHA.  (*Id.*)

On October 17, 2018, plaintiff submitted her bill of costs requesting $8,027.54 in taxable costs.  (Doc. No. 134.)  On October 18, 2018, defendant Keystone filed objections to plaintiff's bill of costs.  (Doc. No. 136.)  On October 31, 2018, plaintiff filed a motion for attorneys' fees and costs seeking an award of $394,073.50 in attorneys' fees and $11,488.78 in nontaxable costs.  (Doc. No. 139.)  On November 6, 2018, defendant Keystone filed an opposition thereto.  (Doc. No. 142.)

On February 25, 2019, the court issued an order, *inter alia*, granting in part and denying in part plaintiff's motion for an award of attorneys' fees and costs (awarding $338,002.50 in attorneys' fees and $200.24 in nontaxable costs) and granting in part and denying in part

/////

---

[3]  Defendant Keystone also moved under Rule 50(a) for dismissal of plaintiff's request for punitive damages.  (*See* Doc. No. 163 at 4.)

plaintiff's bill of costs (awarding "$6,176.65 in pre-September 12, 2017 Rule 68 offer taxable costs").[4]  (Doc. No. 157 at 20.)

Both plaintiff and defendant Keystone timely filed notices of appeal to the Ninth Circuit Court of Appeals.  Plaintiff filed a notice of appeal of the October 3, 2018 judgment entered pursuant to the jury's verdict, challenging several of the district court's evidentiary rulings, as well as the district court's granting of defendant Keystone's Rule 50 motion.  (Doc. No. 140.)  Plaintiff also filed an amended notice of appeal to challenge an order by the district court granting the Sonic defendants' motion for attorneys' fees and costs (Doc. No. 148), which was based on their successful motion for summary judgment.  (Doc. No. 151.)  For its part, defendant Keystone filed a notice of appeal of the district court's February 25, 2019 order granting in part plaintiff's motion for an award of attorneys' fees and costs and plaintiff's bill of costs.  (Doc. No. 158.)

On May 20, 2020, the Ninth Circuit issued a memorandum decision affirming in part, reversing in part, and remanding the case back to this court for further proceedings.  (Doc. No. 163.)  The Ninth Circuit affirmed the district court's evidentiary rulings that plaintiff had challenged on appeal, and it concluded that this court did not err by granting defendant Keystone's Rule 50 motion to dismiss plaintiff's claim for punitive damages.  (*Id.* at 3–4.)  However, the Ninth Circuit concluded that the court erred in granting defendant Keystone's Rule 50 motion to dismiss plaintiff's claim of wrongful termination in violation of public policy premised on a retaliation theory because "[d]eeming a claim redundant or unnecessary is not a proper ground for dismissal . . . ."  (*Id.* at 4–5.)  The Ninth Circuit explained that "the FEHA claim and wrongful termination claim were not duplicative and the jury should have been allowed to consider [plaintiff's] third theory."  (*Id.* at 5–6.)  As for the challenges to the attorneys' fees

---

[4]  As the court explained in that order, defendant Keystone made an offer of settlement under Rule 68 of the Federal Rules of Civil Procedure in the amount of $75,000.00, exclusive of attorneys' fees and costs, on September 12, 2017.  (*See* Doc. No. 157 at 5.)  Because the jury only awarded plaintiff $50,000.00 in damages—a lesser amount than the Rule 68 offer that plaintiff declined—the court concluded that plaintiff could recover only for costs incurred prior to September 12, 2017.  (*Id.* at 6–10.)  As for attorneys' fees, however, the court explained that because "FEHA does not include attorneys' fees as costs, the court determines that [plaintiff's] rejection of the September 2017 Rule 68 offer does not bar her from collecting post-offer attorneys' fees."  (*Id.* at 11.)

and costs awarded, the Ninth Circuit vacated and remanded the order granting the Sonic defendants attorneys' fees and costs because the district court did not explain its basis for the award and the record did not provide any basis for concluding that plaintiff's claims were frivolous, groundless, unreasonable, or vexatious—as is required for a prevailing defendant to obtain a fee award under Title VII and FEHA.  (*Id.* at 7–8.)  Lastly, the Ninth Circuit stated that it did "not consider the district court's other cost and fee awards" because "the district court erred by dismissing [plaintiff's] claim for wrongful termination in violation of public policy."  (*Id.* at 8) ("We vacate those awards and remand for further proceedings consistent with this disposition.").

The Ninth Circuit issued its mandate on July 14, 2020.  (Doc. No. 164.)  Over the nearly three years that followed, the docket reflects no activity in this action whatsoever, until this case was reassigned to the undersigned on May 4, 2023.  (Doc. Nos. 165, 166.)  Even after that reassignment, the parties did not take the initiative to communicate with the court as to the status of this case.  Nonetheless, the court ordered the parties to file a joint status report, which they did at the end of May 2023.  (Doc. Nos. 168, 169.)  On July 25, 2023, the court held a status conference with the parties and scheduled a final pretrial conference and jury trial.  (Doc. No. 171.)  Further, because the parties expressed interest in participating in a settlement conference, the court also referred the case to Magistrate Judge Jeremy D. Peterson for that purpose.  (*Id.*)

On September 14, 2023, Magistrate Judge Peterson conducted a settlement conference with the parties, and the case settled, with the terms of the settlement agreement having been placed on the record.  (Doc. No. 175.)  In light of that settlement, on September 15, 2023, the court vacated the final pretrial conference and jury trial, and directed the parties to "promptly file dispositional documents after their long form settlement agreement is finalized."  (Doc. No. 176.) As reflected in the transcript of the parties placing the settlement terms on the record, defendants agreed to pay plaintiff $70,000.00 in exchange for a general release by plaintiff of any and all claims, "except as to the entitlement to the fees and costs that [plaintiff's counsel] have asserted and which were the subject of [defendant Keystone's] appeal to the Ninth Circuit specific to this litigation."  (Doc. No. 178 at 3–4.)  Defense counsel also stated, to which plaintiff's counsel concurred:

> The parties understand that this is a compromise and settlement for various matters and that the partial settlement of [plaintiff's] claim shall not be construed to be an admission of any liability or obligation of the parties.  There will be no additional recovery by [plaintiff] in her individual capacity as any aspect in this litigation.

(*Id.* at 4.)  Further, defendant Keystone and the Sonic defendants all agreed that as part of this settlement, they waive their right to any award of costs in this action and will no longer pursue such an award.  (*Id.* at 5–6.)  Defense counsel clarified, however, that this waiver does not "prejudice in any way any defenses it may have with respect to plaintiff counsel's application for fees and costs in this matter."  (*Id.* at 6.)

Plaintiff did not promptly file a motion for attorneys' fees and costs following the settlement conference.  Rather, in the months that followed, the parties continued to meet and confer regarding disputes as to the settlement agreement, and they participated in two further conferences with Magistrate Judge Peterson in October and November 2023.  (Doc. Nos. 179–181.)  These additional efforts were not successful in resolving the remaining issue of plaintiff's attorneys' fees and costs, the payment of which plaintiff seeks from defendant Keystone.

On January 21, 2024, plaintiff filed the pending motion for attorneys' fees and costs, along with a declaration from plaintiff's counsel, attorney Jocelyn Burton, in support of that motion.  (Doc. Nos. 182, 182-2.)  On February 12, 2024, defendant Keystone filed an opposition to the pending motion.  (Doc. No. 183.)  On February 12, 2024, plaintiff filed a reply thereto, along with a second declaration from attorney Burton.  (Doc. Nos. 184, 184-1.)

## LEGAL STANDARD

In an action brought under FEHA, California law provides that the court, "in its discretion, may award to the prevailing party . . . reasonable attorney's fees and costs."  Cal. Gov't Code § 12965(c)(6).  "Because fee awards to prevailing FEHA plaintiffs promote the important public policy in favor of eliminating discrimination in the workplace, a "prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust."  *Vines v. O'Reilly Auto Enters., LLC*, 74 Cal. App. 5th 174, 182 (2022) (internal citation and quotation marks omitted).

/////

6

"When state law authorizes a party to recover fees, a federal court applies state law to calculate the amount of those fees." *Marshall v. Boeing Co.*, No. 16-cv-08630-DMG-MRW, 2019 WL 4391111, at *1 (C.D. Cal. June 10, 2019) (citing *Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995)). "[T]he fee setting inquiry in California ordinarily begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate." *PLCM Grp. v. Drexler*, 22 Cal. 4th 1084, 1095 (2000); *see also Vines*, 74 Cal. App. 5th at 182 ("In order to calculate an attorney fee award under the FEHA, courts generally use the well-established lodestar method."); *Watts-Lynch v. Delta Air Lines, Inc.*, No. 15-cv-09476-MWF-RAO, 2018 WL 5857901, at *2 (C.D. Cal. Apr. 10, 2018) ("Under California law, the court must begin by applying the 'lodestar' method for awarding attorneys' fees under FEHA.").

The court "should exclude from this initial fee calculation hours that were not 'reasonably expended'" because they were "excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). "In addition to setting the number of hours, the court must also determine a reasonable hourly rate, 'considering the experience, skill, and reputation of the attorney requesting fees.'" *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007) (quoting *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986) ("In determining a reasonable hourly rate, the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation.")). "Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008).

"There is a strong presumption that the lodestar figure represents a reasonable fee." *Morales v. City of San Rafael*, 96 F.3d 359, 364 (9th Cir. 1996). "[I]n rare cases, a district court may make upward or downward adjustments to the presumptively reasonable lodestar on the basis of those factors set out in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69–70 (9th Cir. 1975), that have not been subsumed in the lodestar calculation." *Camacho*, 523 F.3d at 982 (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1402 (9th Cir. 1992)). Those relevant factors include: "preclusion of other employment by the attorney due to acceptance of the case; time

7

limitations imposed by the client or the circumstances; the amount involved and the results obtained; the 'undesirability' of the case; the nature and length of the professional relationship with the client; and awards in similar cases." *Camacho*, 523 F.3d at 982 n.1.

## ANALYSIS

As a preliminary matter, the court notes that plaintiff's pending motion is largely unhelpful.  In that motion, plaintiff asserts that her "counsel spent more than 1,300 hours and advanced over $19,000.00 in costs" during the nine years of this "vigorously contested litigation." (Doc. No. 182-1 at 2.)  Plaintiff states that she is not seeking a multiplier of the lodestar, but "in an exercise of billing judgment, has reduced her requested fees by 10% for a total request of $630,387.00 in attorneys' fees and $19,516.32 in costs." (*Id.* at 12.)  Aside from a summary of the procedural background of this case and a recitation of the applicable legal standards, plaintiff's motion is lacking in specifics and any meaningful analysis to support plaintiff's request for attorneys' fees and costs.  Although plaintiff's counsel's declaration attached billing records as exhibits and provides some specifics regarding the number of hours spent and the costs incurred (Doc. No. 182-2), the argument section of plaintiff's motion does not cite to that declaration at all, let alone cite to particular paragraphs of that declaration.  Attorney Burton's declaration provides breakdowns of the time spent by plaintiff's counsel over four distinct time periods:  (1) August 20, 2015 through October 30, 2018; (2) October 31, 2018 through February 25, 2019; (3) February 26, 2019 through May 20, 2020; and (4) May 21, 2020 through January 20, 2024.  (Doc. No. 182-2 at 4–6.)  Though again, plaintiff's motion does not provide any details with regard to the hours spent or work performed during these periods.  More importantly, plaintiff does not provide any analysis or argument as to why fees should be awarded for hours spent by her counsel during these periods of time.

Nevertheless, the court will proceed to address plaintiff's request for an award of attorneys' fees as to each period of time, and then turn to plaintiff's requests for taxable and nontaxable costs.

/////

/////

8

1  **A.      Plaintiff's Motion for Attorneys' Fees**

2          1.      <u>Time Spent from August 20, 2015 through October 30, 2018</u>

3          Plaintiff's pending motion is nearly identical to the motion for attorneys' fees and costs

4  that she filed on October 31, 2018 and that the court granted in part and denied in part in its

5  February 25, 2019 order, with a few differences.[5]  (Doc. Nos. 139, 157.)

6          First, however, for the same period of time (inception of the case in August 2015 through

7  October 30, 2018), plaintiff now seeks an award based on higher hourly rates than those

8  previously sought by plaintiff in her prior motion for attorneys' fees and higher than those applied

9  by the court to calculate plaintiff's counsel's lodestar in the February 25, 2019 order.  Plaintiff

10  previously requested attorneys' fees based on the following hours and hourly rates:  510.70 hours

11  at $530 per hour for senior attorney Burton; 481.10 hours at $250 per hour for junior attorney

12  Scott Nakama; 31.6 hours at $100 per hour for paralegal Helen O'Keefe; and 17.3 hours at $100

13  per hour for paralegal Kirtecia Griggs.  (Doc. No. 139-1 at 4.)  While the court had found $530 to

14  be a reasonable hourly rate for attorney Burton and $100 to be a reasonable hourly rate for both

15  paralegals, the court reduced attorney Nakama's hourly rate to $175 because $250 was not a

16  reasonable rate given that he had only one to four years of experience while working on this case.

17  (Doc. No. 157 at 14–15.)  Yet, in the pending motion, plaintiff seeks an award based on

18  purportedly "current" 2024 hourly rates for all hours spent by all four timekeepers—$650 for

19  attorney Burton; $400 for attorney Nakama; $175 for paralegals O'Keefe and Griggs.  (Doc. No.

20  182-2 at 4–5.)  Attorney Burton represents in her declaration that these hourly rates are "current"

21  for these timekeepers, but that representation is unsupported by any assertions of personal

22  knowledge or foundation.  Critically, apart from herself, none of the other timekeepers still work

23  at attorney Burton's law firm—paralegal Griggs left the firm in April 2017, attorney Nakama left

24  the firm in April 2020, and paralegal O'Keefe left the firm in August 2022.  (Doc. No. 182-2 at

25  _____

26  [5]  Although the Ninth Circuit vacated the court's February 25, 2019 fee award order, it did so
   without considering it or addressing defendant Keystone's challenge to that award.  (Doc. No.
27  163 at 8.)  Plaintiff does not advance any arguments in the pending motion to suggest that the
   court had erred in that order.  Further, plaintiff does not articulate any basis upon which the
28  undersigned should revisit the court's analysis set forth in that prior order.

3–5, ¶¶ 10–12, 16, 20.)  Thus, even if the court were to determine that "current" rates were applicable here, plaintiff has not sufficiently substantiated that the requested rates are indeed the current hourly rate for those timekeepers.  Further, the court agrees with defendant Keystone's argument that these hourly rate increases, which "results in an increase of $129,551.55 in fees for this period alone," are not proper or warranted in this case.  (Doc. No. 183 at 16.)  Notably, this case sat dormant for nearly three years, with no action whatsoever undertaken by plaintiff to move it along following remand from the Ninth Circuit in May 2020.  Given these circumstances, applying 2024 hourly rates to work performed through October 30, 2018 is simply not appropriate or defensible.  Plaintiff has not offered any persuasive argument as to why the hourly rates found reasonable in the court's February 25, 2019 order should not be applied again for that same period of time.  The court finds that application of the previously-approved hourly rates remains appropriate for the attorney and paralegal hours spent from August 2015 through October 30, 2018.

Second, plaintiff's counsel represents that "the number of hours remain unchanged" for the period of August 2015 through October 30, 2018, i.e., that plaintiff seeks attorneys' fees for this period of time based on the same number of hours as she sought in her prior motion (albeit at higher hourly rates).  (Doc. No. 182-2 at 4–5, ¶ 20.)  However, as reflected in the chart below, that statement is simply not true for time purportedly spent by attorneys Burton and Nakama, and plaintiff offers no explanation for the discrepancies.

| Timekeeper | Hours Previously Requested by Plaintiff | Hours Previously Found Reasonable by the Court | Hours Requested by Plaintiff in the Pending Motion |
|---|---|---|---|
| Attorney Burton | 510.70 | 495.25 | 499.8 |
| Attorney Nakama | 481.10 | 403.6 | 475.80 |

(*See* Doc. Nos. 139-1 at 4; 157 at 14; 182-2 at 5.)  In the February 25, 2019 order, the court explained that it reduced attorney Burton's hours because plaintiff should not have included hours for time spent opposing the Sonic defendants' motion to dismiss and motion for summary judgment.  (Doc. No. 157 at 13.)  With no explanation or acknowledgment of the court's prior decision to exclude these hours, plaintiff apparently again seeks attorneys' fees for 4.55 hours

1    spent by attorney Burton on tasks pertaining to the Sonic defendants, not defendant Keystone.

2    The court will not accept the unexplained increase in the number of hours spent by attorney

3    Burton for this time period.  Similarly, the court's February 25, 2019 order reduced attorney

4    Nakama's hours due to excessive billing (20 hours), time spent on tasks pertaining to the Sonic

5    defendants (38 hours), and time unreasonably spent to review the transcript of the trial that he

6    attended each day (19.5 hours).  (Doc. No. 157 at 12–13.)  Yet again, with no acknowledgement

7    of these prior reductions and the court's reasons for imposing them, plaintiff's pending motion

8    includes the vast majority of these hours without any argument or attempt to demonstrate that

9    these hours were reasonably spent by attorney Nakama.  Plaintiff has plainly failed to persuade

10   the court that it should revisit the prior determination that a significant portion of attorney

11   Nakama's hours were unreasonable and should be excluded from the court's lodestar calculation

12   as a result.

13          For all of these reasons, the court concludes that the hourly rates and number of hours

14   previously found to be reasonable in the court's February 25, 2019 order for the time spent from

15   August 2015 through October 30, 2018 remain the appropriate lodestar.  Accordingly, the court

16   will award plaintiff $338,002.50 in attorneys' fees for this period of time.[6]  (*See* Doc. No. 157

17   at 16.)

18   /////

19

_____

20   [6] The court is not persuaded by defendant Keystone's argument that plaintiff is not entitled to an
     award of attorneys' fees *at all* because she is not the prevailing party according to defendant

21   Keystone.  (Doc. No. 183 at 10–11.)  Defendant Keystone cites only to authority pertaining to
     Title VII and emphasizes that plaintiff did not prevail at trial on any of her Title VII claims.  (*Id.*

22   at 14–15.)  However, plaintiff's motion for attorneys' fees is based on FEHA, not Title VII.
     Moreover, defendant Keystone did not appeal the judgment that was entered pursuant to the

23   jury's verdict in favor of plaintiff on the two FEHA claims, which was the basis for the court
     finding plaintiff to be the prevailing party entitled to an award of attorneys' fees under FEHA.

24   (See Doc. No. 157 at 2, 10–11.)  Although plaintiff appealed that judgment for other reasons and
     was successful in part, the fact that she ultimately decided to settle her claims rather than proceed

25   with a new trial on the claim the Ninth Circuit found to be improperly dismissed does not serve to
     nullify her status as the prevailing party with regard to her successful FEHA claims.  Thus, in

26   exercising its discretion to award attorneys' fees to parties who prevail on claims brought under
     FEHA, the court finds that plaintiff remains the prevailing party under FEHA and will award

27   attorneys' fees for the time reasonably spent from August 2015 through October 30, 2018.

28

11

2.        Time Spent from October 31, 2018 through February 25, 2019

The docket reflects the following relevant activity from October 31, 2018 through February 25, 2019 (the date the court issued its order on plaintiff's motion for attorneys' fees and costs):  (i) plaintiff filed a motion for attorneys' fees and costs; (ii) plaintiff filed a notice of appeal of the judgment entered pursuant to the jury's verdict; (iii) plaintiff filed an opposition to the Sonic defendants' motion for attorneys' fees and costs; (iv) the Sonic defendants filed a reply in support of their fees motion; (v) plaintiff filed a notice of supplemental authority in support of her objections to defendant Keystone's bill of costs; (vi) the court held a hearing on the Sonic defendants' fee motion and issued an order granting that motion; (vii) plaintiff filed a reply to defendant Keystone's objections to her bill of costs; (viii) defendant Keystone filed a response in support of its own bill of costs; (ix) plaintiff filed an amended notice of appeal to include in her appeal review of the court's order granting the Sonic defendants' motion for fees; (x) defendant Keystone filed an opposition to plaintiff's fees motion; (xi) plaintiff filed a reply in support of her fees motion; and (xii) defendant Keystone filed objections to the declaration of attorney Burton submitted in connection with plaintiff's reply brief.  (Doc. Nos. 139–156.)  As plaintiff indicates in her reply brief in support of the pending motion, she seeks attorneys' fees for the time spent by her counsel on all of these activities—including activities that pertain only to the Sonic defendants, not defendant Keystone.  (Doc. No. 184 at 9–10.)  Specifically, plaintiff seeks attorneys' fees for the 35.7 hours spent by attorney Burton and 4.4 hours spent by attorney Nakama during this time period, for a total of $24,965.00 (using 2024 billing rates).  However, as the court previously explained in the February 25, 2019 order, plaintiff is not entitled to attorneys' fees for the time spent by her counsel on tasks pertaining to the Sonic defendants.  Though plaintiff's counsel did not provide subtotals for the amount of time spent on these tasks, the court has carefully reviewed plaintiff's counsel's billing records and determined that at least 21.7 hours expended by attorney Burton were spent on tasks pertaining solely to the Sonic defendants.  Accordingly, the court will calculate a lodestar for this time period based on only 14 hours spent by attorney Burton and 4.4 hours spent by attorney Nakama.  Further, for the reasons explained

/////

12

above, the court will apply the hourly rates that the court previously found to be reasonable in calculating the lodestar for this period.

Based upon the number of hours and rates found to be appropriate, the court will award plaintiff $8,190.00 in attorneys' fees for this period of time.[7]

3.    Time Spent from February 26, 2019 through May 20, 2020

The docket in this action reflects that, apart from plaintiff and defendant Keystone filing their respective notices of appeal of the court's February 25, 2019 order, there was no activity *in this court* from February 26, 2019 through May 20, 2020, the date on which the Ninth Circuit issued its memorandum decision on the parties' respective appeals. (Doc. Nos. 158, 161.) Nevertheless, plaintiff seeks an award of attorneys' fees for the 190 hours spent by her counsel during that time period. (Doc. No. 182-2 at 6.) However, plaintiff offers no argument or basis as to why she should be deemed to be the prevailing party with respect to her appeal, given that she obtained limited success—an opportunity for a new trial to submit her claim for wrongful termination in violation of public policy to the jury—and she ultimately elected to settle her claims with defendants instead of proceeding with a new trial. The parties reaching of a settlement in lieu of proceeding with a new trial arguably accounts for plaintiff's limited success on appeal, i.e., the parties accounted for the perceived value of plaintiff's improperly dismissed wrongful termination claim in their settlement negotiations. Notably, the terms of the settlement as stated on the record reflected that the only remaining issue to be resolved was "the entitlement to the fees and costs that [plaintiff's counsel] have asserted and which were the subject of the [defendant Keystone's] appeal to the Ninth Circuit specific to this litigation." (Doc. No. 178 at 3–4.) Fees incurred in connection with the appeal are clearly not "the subject" of defendant Keystone's appeal, which sought review of this court's February 25, 2019 order granting in part and denying in part plaintiff's motion for attorneys' fees and costs.

In addition, even if the court were to determine that plaintiff was entitled to attorneys' fees for this time period, plaintiff's counsel's declaration and billing records are replete with errors

---

[7]  $8,190.00 = $7,420.00 (14 hours at an hourly rate of $530) + $770.00 (4.4 hours at an hourly rate of $175 for attorney Nakama)

13

and discrepancies, as well as vague entry descriptions, all of which make it impossible for the court to determine the number of hours spent on the appeal at all, let alone the hours pertaining only to defendant Keystone and the reasonableness of those hours.  For example, attorney Burton's declaration provides a chart indicating 190 total hours were spent during the time period February 26, 2019 through May 20, 2020 (116.90 hours by attorney Burton, 48 hours by attorney Nakama, and 25.10 by paralegal O'Keefe).  (Doc. No. 182-2 at 6.)  However, the billing records provided to substantiate this chart only list attorney Burton's time entries.  (Doc. No. 182-2 at 173–179.)  Even more confusing, those billing records list attorney Burton's entries from February 26, 2019 through May 19, <u>2022</u>, for a total of 116.90 hours.  (*Id.*)  Moreover, some of those entries include vague descriptions, such as "case file," "mail," and "NC"—which understandably cast further doubt on the reliability of plaintiff's counsel's billing records.  (*Id.*)  For example, the billing records indicate that on August 23, 2019, attorney Burton spent 18.4 hours "drafting/revising appellate briefs" and 1.4 hours on top of that for "NC," without any explanation or definition of what "NC" means.  (*Id.* at 177.)  In short, there are no billing records at all to substantiate the time purportedly spent by attorney Nakama and paralegal O'Keefe during this time period, and the records provided with regard to attorney Burton's time are plainly insufficient.

Accordingly, the court will not award plaintiff any amount in attorneys' fees for the time purportedly spent from February 26, 2019 through May 20, 2020.

4.      <u>Time Spent from May 21, 2020 through January 20, 2024</u>

Lastly, plaintiff requests an award of attorneys' fees for the 90.9 hours spent by attorney Burton from May 21, 2020 (the day after the Ninth Circuit issued its memorandum decision) through January 20, 2024 (the day before plaintiff filed the pending motion).  (Doc. No. 182-2 at 6, ¶ 24.)  The court will not award plaintiff any amount in attorneys' fees for this time period for several reasons.  First, similar to the appeal time period discussed above, plaintiff has not offered any persuasive, non-conclusory argument to support a fee award during this period of time in which the parties negotiated a settlement of plaintiff's claims.  Second, as noted above, the docket reflects no activity from plaintiff in this action for nearly three years following the Ninth Circuit's

14

1  decision, and yet somehow plaintiff's counsel's billing records include five pages worth of entries

2  for attorney Burton during that period of dormancy. (Doc. No. 182-2 at 197–202.) Third, many

3  of the entries during that dormant period lead to further concern regarding the reliability of those

4  billing records (e.g., "stipulation regarding trial dates" on November 29, 2021; "written motions

5  and submissions" and "fact investigation/development" on February 22, 2021; "scheduling

6  motion for pretrial and motion work" on February 3, 2023). (*Id.*) Fourth, plaintiff's counsel

7  provides no explanation as to why the billing records reflect a column for "actual" hours of 74.22,

8  but "billable" hours of 90.9, for this period. (*Id.* at 202.) Here too, even if the court were to

9  determine that plaintiff should be awarded attorneys' fees for this period of time, the billing

10 records submitted by plaintiff's counsel are plainly unreliable and insufficient to support any such

11 award.

12        Accordingly, the court will not award plaintiff any amount in attorneys' fees for the time

13 spent from May 21, 2020 through January 20, 2024.

14        In sum, the court will grant plaintiff's motion for an award of attorneys' fees in part and

15 award plaintiff a total of $346,192.50 in attorneys' fees.[8]

16 **B.     Plaintiff's Motion for an Award of Costs**

17        Rule 54 of the Federal Rules of Civil Procedure states, "[u]nless a federal statute, these

18 rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed

19 to the prevailing party." Fed. R. Civ. P. 54(d)(1). "Rule 54(d) creates a presumption for

20 awarding costs to prevailing parties; the losing party must show why costs should not be

21 awarded." *Save Our Valley v. Sound Transit*, 335 F.3d 932, 944–45 (9th Cir. 2003).

22        However, an offer of judgment made pursuant to Rule 68 may impact the amount of costs

23 that the prevailing party recovers. Specifically, "[i]f the judgment that the offeree finally obtains

24 is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the

25 offer was made." Fed. R. Civ. P. 68(d). Thus, "[a] plaintiff that rejects a Rule 68 offer in excess

26 of the judgment ultimately obtained at trial must bear its own and the defendant's post-offer

27

28 [8] $346,192.50 total = $338,002.50 (August 20, 2015 through October 30, 2018) + $8,190.00 (October 31, 2018 through February 25, 2019).

15

costs." *Champion Produce, Inc. v. Ruby Robinson Co.*, 342 F.3d 1016, 1026 (9th Cir. 2003) (citing *Haworth v. State of Nev.*, 56 F.3d 1048, 1052 (9th Cir. 1995)); *see also Haworth*, 56 F.3d at 1053 ("Because the plaintiffs recovered less by judgment than the Rule 68 offer, they are not entitled to any of the costs they incurred after the Rule 68 offer of judgment was made."). The limitation on recovery of costs applies even when the prevailing party seeks an award of costs pursuant to FEHA, which as noted above, provides that the court, "in its discretion, may award to the prevailing party . . . reasonable attorney's fees and costs." Cal. Gov't Code § 12965(c)(6). While a prevailing party's recovery of attorneys' fees is not impacted by a rejected Rule 68 offer, the prevailing party cannot recover for costs (taxable and nontaxable) incurred after a more favorable Rule 68 offer was made. *See Haworth*, 56 F.3d 1052.

Here, in the pending motion plaintiff seeks an award of $19,516.32 in costs. (Doc. No. 182-1 at 12.) As with plaintiff's request for attorneys' fees, plaintiff's motion offers no specifics or details as to the amount of costs incurred in this action, i.e., no breakdown, no descriptions, no subtotals, etc. Rather, plaintiff's counsel merely attached as an exhibit to her declaration a spreadsheet of expenses and invoices purportedly substantiating plaintiff's costs totaling $19,516.32. (Doc. No. 182-2 at 213.) Plaintiff's counsel also provides a summary chart reflecting subtotals in nine categories (e.g., trial transcripts, postage, federal express, etc.) totaling $11,488.28 in nontaxable costs incurred, though there are no dates or time periods appearing in that chart. (*Id.* at 7, ¶ 25.) Plaintiff's counsel further asserts in her declaration that "plaintiff renews her bill of costs submitted on October 17, 2018," in which plaintiff sought $8,027.54 in taxable costs. (*Id.* at 7, ¶ 26.)

Notably, plaintiff's prior motion for attorneys' fees and costs sought an award of costs in this same amount ($19,516.32), and the declaration of plaintiff's counsel filed in support of that prior motion likewise included a summary chart and spreadsheet of expenses. (*See* Doc. No. 157 at 19.) However, unlike the declaration of plaintiff's counsel filed in support of the pending motion, plaintiff's counsel did not attach invoices and receipts as exhibits to her prior declaration. Due to the lack of adequate substantiation of the nontaxable costs totaling $11,488.78, the court previously awarded only $200.24 in nontaxable costs, reflecting plaintiff's Federal Express costs

16

because those entries included verifiable tracking numbers.  (*Id.* at 19–20.)  Further, although plaintiff's bills of costs sought $8,027.54 in taxable costs, the court previously awarded only $6,176.65 in taxable costs because plaintiff's rejection of defendant Keystone's September 12, 2017 Rule 68 offer truncated the costs plaintiff may otherwise recover under Rule 54(d).  (*Id.* at 8.)

In their respective briefs in connection with the pending motion, neither party advances any helpful argument with regard to plaintiff's request for costs.  As for plaintiff's renewed bill of costs, the court finds no reason to depart from the prior analysis and conclusion articulated in the February 25, 2019 order awarding plaintiff $6,176.65 in taxable costs incurred before the September 12, 2017 Rule 68 offer.  (Doc. No. 157 at 8–10.)  Thus, the court will again award plaintiff this amount in taxable costs.

As for plaintiff's request for nontaxable costs, as explained above, plaintiff is likewise not able to recover for nontaxable costs incurred after the September 12, 2017 Rule 68 offer was made.  *See Haworth*, 56 F.3d 1052.  Although plaintiff has now provided spreadsheets and invoices reflecting expenses incurred, these submissions are not divided by date range or otherwise separated with distinct time periods such that the court could readily determine the amount of nontaxable costs incurred before the September 12, 2017 Rule 68 offer.  Even though the spreadsheet of expenses is listed in chronological order, that spreadsheet is comprised of *all* costs, not just nontaxable costs, and it is unclear which line items have already been accounted for in plaintiff's bill of costs (taxable).  The court will not comb through the several dozens of pages of invoices and billing statements to discern which costs were incurred prior to September 12, 2017 and not already included in the bill of costs.  Rather, the court will award only the following as nontaxable costs:  (1) the mediation costs of $3,000.00, which is readily substantiated by a stand-alone invoice from August 2016 (*see* Doc. No. 182-2 at 232); and (2) the Federal Express costs of $200.24, which the court had previously found to be supported.  Thus, the court will award nontaxable costs in the amount of $3,200.24.

In sum, the court will grant plaintiff's motion for an award of costs totaling $9,376.89.

/////

17

1

**CONCLUSION**

2    For the reasons explained above,

3    1.    Plaintiff's motion for an award of attorneys' fees and costs pursuant to California

4           Government Code § 12965(c)(6) and Federal Rule of Civil Procedure 54(d)

5           (Doc. No. 182), is granted in part and denied in part, as follows:

6           a.    The court awards plaintiff $346,192.50 in attorneys' fees;

7           b.    The court awards plaintiff $9,376.89 in costs, which consists of $6,176.65

8                  in taxable costs from plaintiff's renewed bill of costs (Doc. No. 134), and

9                  $3,200.24 in nontaxable costs; and

10           c.    Plaintiff's motion is otherwise denied;

11    2.    In light of the procedural posture of this case, particularly the parties' decision to

12           settle plaintiff's claims and defendant Keystone's request for costs rather than

13           pursue a new trial following remand, the court clarifies that this order does not

14           provide for the accrual of any pre-judgment or post-judgment interest on the

15           amounts awarded herein; and

16    3.    Within ten (10) days from the date of entry of this order, the parties shall file

17           dispositional documents pursuant to their settlement agreement in this action.

18    IT IS SO ORDERED.

19
20    Dated:   **April 29, 2024**

                          DALE A. DROZD
21                        UNITED STATES DISTRICT JUDGE